UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUTH WYSOCKI,

        Plaintiff,                    Civil Action No. 16-11753
                                      Honorable David M. Lawson
        v.                    Magistrate Judge Elizabeth A. Stafford

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NO. 20, 22]

Plaintiff Ruth Wysocki appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for Supplemental Security Income Benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Wysocki's motion [ECF No. 20] be **DENIED**;

- the Commissioner's motion [ECF No. 22] be **GRANTED**; and

- this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Wysocki's Background and Claimed Disabilities

Born January 14, 1966, Wysocki was 48 years old when she
submitted her applications for disability benefits on June 6, 2014.  [ECF No.
15-3, Tr. 88].  She has a high school education, and past relevant work as
a sign installer.  [ECF No. 15-2, Tr. 48, 45].  Wysocki alleged that she is
disabled due to depression, anxiety, fibromyalgia, diabetes, arthritis,
bulging disc in the neck, and difficulty ambulating (uses a cane), with an
onset date of January 1, 2008.  [*Id.*, Tr. 88-89].

After a hearing on September 29, 2015, which included the testimony
of Wysocki and a vocational expert ("VE"), the ALJ found that Wysocki was
not disabled.  [ECF No. 15-2, Tr. 36-87, 22-31].  The Appeals Council
denied review, making the ALJ's decision the final decision of the
Commissioner. [*Id.*, Tr. 10-14].  Wysocki timely filed for judicial review.
[ECF No. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

SSI is available for those who have a "disability."  *See Colvin v.
Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  A "disability" is the "inability to
engage in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. § 416.920(a)(4).  Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity, and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

3

reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Wysocki was not disabled.  At step one, he found that Wysocki had not engaged in substantial gainful activity since June 6, 2014, the application date.  [ECF No. 15-2, Tr. 24].  At step two, he found that she had the severe impairments of "depression, degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral hips, degenerative disc disease of the cervical spine, and fibromyalgia."  [*Id.*].  At step three, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*].

Between the third and fourth steps, the ALJ found that Wysocki had the RFC to perform light work[2] with the following exceptions:

> She in unable to climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs.  She can occasionally balance, stoop, kneel, crouch, and crawl.  The claimant requires a handheld assistive device when ambulating on uneven terrain or when performing prolonged ambulation.  She must avoid even moderate use of moving machinery and moderate exposure to unprotected heights.  The claimant is limited to performing simple, routine, repetitive tasks with only

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

4

one and two-step directions.

[*Id.*, Tr. 26].  At step four, the ALJ found that Wysocki could not perform any

past relevant work.  [*Id.*, Tr. 29]. With the assistance of VE testimony [*Id.*,

Tr. 82], the ALJ determined at step five that based on Wysocki's age,

education, work experience and RFC, she could perform work as a cashier,

office helper, and inspection work and that those jobs existed in significant

numbers in the economy, rendering a finding that she was not disabled.

[*Id.*, Tr. 30, 84].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence

and was made in conformity with proper legal standards.  *Gentry v. Comm'r

of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007) (internal quotation marks and citation omitted).  Only the

evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence.  *Bass v.

McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

5

III.   **ANALYSIS**

Wysocki argues that the ALJ erred in assessing her RFC and credibility.  For the reasons stated below, the Court disagrees and recommends that the ALJ's decision be affirmed.

### A.

Wysocki argues that her RFC was not properly formulated and that the ALJ's decision was not supported by substantial evidence, particularly that large portions of the medical record and medical impairments were ignored.

The relevant medical record shows that, in March 2010 an x-ray taken of Wysocki's right shoulder and neck revealed a reversal of the normal cervical lordosis without evidence for fracture, dislocation or significant spondylosis; and a minimal degenerative change of the acromioclavicular joint without fracture or dislocation in the shoulder.  [ECF No. 15-7, Tr. 378].  In September 2011, Wysocki sought emergency treatment while in a wheel chair, claiming that she could "barely walk" and had pain in her hip, knee, and lower back.  [ECF No. 15-10,Tr. 890-96].  She denied numbness and tingling, but claimed needing help from her husband over the weekend with activities of daily living.  [*Id.*, Tr. 896].

6

In October 2011, Joseph J. Weiss, M.D., diagnosed Wysocki with fibromyalgia/fibrositis.  [ECF No. 15-9, Tr. 783].  She had no swelling or decreased range of motion of her hands, wrists, elbows, shoulders, hip, knees, ankles or feet, but had a rolling gait.  [*Id*.].

Wysocki sought emergency care a number of times at Saint Joseph Mercy Livingston Hospital for various complaints.  In November 2011, she presented to the hospital with lower extremity pain and swelling, particularly in her left leg.  [ECF No. 15-11, Tr. 1114].  In the physical examination, she was found to have normal range of motion, normal strength, and no tenderness or swelling.  [*Id.*, Tr. 1117].  There was tenderness to the palpation of her left calf.  [*Id.*].

In December 2011, Wysocki presented to the emergency room again with complaints of her fibromyalgia acting up, and pain in her head, neck, back, chest, abdomen, arms, legs, knees, feet and ankles.  She was reportedly out of Lyrica, Valium and narcotics because she had not seen her primary care physician, due to insurance issues.  [*Id.*, Tr. 1089].  In January 2012, she presented with left shoulder pain that radiated down her arm and increased with movement and palpation.  [ECF No. 15-10, Tr. 818-20].  Upon examination, the range of motion to the left shoulder was restricted by pain.  [*Id*]  An x-ray revealed mild AC joint osteoarthritis in the

7

shoulder. [*Id.*, Tr. 828]. In March 2012, she presented to the ER with facial drooping, slurred speech, weakness and numbness in her upper extremities, and a transient ischemic attack. [ECF No. 15-11, Tr. 990-94].

Further emergency room reports for various impairments indicated: a diffuse headache in April 2012, [ECF No. 15-15, Tr. 1637, 1631]; shooting pain in the right foot in May 2012, [*Id.*, Tr. 1612]; her fibromyalgia acting up with lower extremity pain and a right knee injury after falling in June 2012, [ECF No. 15-14, Tr. 1596, 1573-75]; headaches and right sided numbness in July 2012, [*Id.*, Tr. 1532-35]; bilateral lower extremity pain and swelling, particularly in the left calf in September 2013, [*Id.*, Tr. 1465-68, 1585]; and a fibromyalgia flare up in April and July 2014. [ECF No. 15-13, Tr. 1208-10; ECF No. 15-8, Tr. 497]. In May 2012, an EMG of Wysocki's upper and lower extremities was taken to rule out peripheral neuropathy, with results indicating a "non-specific abnormal study" and no sign of peripheral neuropathy. [ECF No. 15-7, Tr. 307].

X-rays of Wysocki's cervical spine taken in August 2012 revealed slight reversal of cervical lordosis in the lower cervical spine and mild degenerative disease and osteoarthritic changes at C6-7. [ECF No. 15-7, 381]. In June 2013, Wysocki presented to the emergency room complaining of swollenness in her left lower extremity, and was diagnosed

8

with peripheral edema and chronic pain.  [ECF No. 15-7, Tr. 385-86].  She was ambulatory, with a slow but steady gait.  [*Id.*].  A few days later, due to a falling injury, an x-ray was taken of Wysocki's knees, revealing a possible minimal spur formation along the medial border of the tibial plateau on the right side; otherwise, the knees appeared normal.  [*Id.*, Tr. 416].

In August 2013, an MRI of the cervical spine showed mild cervical spondylosis; mild cervical facet hypertrophy contributing to neural foraminal stenosis; and mild discogenic degenerative changes within the cervical vertebral column.  [ECF No. 15-8, Tr. 562-63].  Additional emergency room reports show the following: complaints of back pain and right sided leg pain, difficulty with ambulation due to her pain, and "tingling" in her feet in September 2013, [ECF No. 15-8, Tr. 553]; back pain radiating down to her bilateral lower extremities in December 2013, [*Id.*, Tr. 525]; paresthesias in her lower extremities, arms and face in January 2014, [*Id.*, Tr. 510]; fibromyalgia flare-up and muscle aches in April 2014, [*Id.*, Tr. 493, 497]; and an irregular pulse rate in July 2014.  [*Id.*, Tr. 459].  And the medical record indicates that Wysocki was treated by Shannon Browne, M.D., between 2013 and 2015 for various impairments, including, asthma, chronic fatigue syndrome, hypertension and fibromyalgia.  [ECF No. 15-7, Tr. 394, 390, 388, 400].

9

In December 2013, Wysocki went to Greater Ann Arbor Neurology Associate with complaints of cognitive difficulty, numbness and tingling in hands and feet, generalized weakness, muscle spasms in her legs, balance problems, and pain in the knees and ankles due to osteoarthritis, requiring the use of a walker.  [ECF No. 15-7, Tr. 439].  Upon examination, Xi Guo, M.D. found that muscle strength in the upper and lower extremities was normal.  [*Id.*, Tr. 440].  Her gait was limping and wide based.  [*Id.*].

In July 2014, an x-ray revealed mild left hip joint osteoarthritis.  [ECF No. 15-8, Tr. 477].

In a December 2014, Mary C. Wood, M.D., conducted an examination of Wysocki at the request of Disability Determination Services (DDS), and reported that Wysocki had type 2 insulin dependent diabetes, labile hypertension, fibromyalgia, osteoarthritis, essential tremor, GERD, irritable bowel syndrome, a history of asthma, and anxiety and depression, but could perform all physical abilities, including sitting, standing, bending, stooping, carrying, pushing and pulling.  [*Id.*, Tr. 570-75].  "The examination of the cervical, dorsal, and lumbosacral spine clinically did not reveal any striking abnormalities."  [*Id.*, Tr. 573].  Dr. Wood found that Wysocki could walk on heels and toes and in tandem, and that the clinical evidence did not support the need for a walking aid.  [*Id.*, Tr. 576].

10

In January 2012, an MRI of the thoracic spine showed a mild broad-based disc bulge at T5-T6, and no sizable disc protrusion or severe canal stenosis identified in the thoracic spine.  [ECF No. 15-12, Tr. 1177].

The record further indicates that Wysocki was seen by Associates in Physical Medicine and Rehabilitation from January to March 2015, where she was diagnosed with fibromyalgia and degenerative disc disease, and complained of pain throughout the lower extremities and lower back, numbness/tingling, pain in the shoulder, elbow, and neck, headaches, and difficulty ambulating and sleeping, along with anxiety and depression. [ECF No. 15-12, Tr. 1166-1185].

Wysocki argues that the ALJ omitted large portions of the record; she claims that the ALJ cited clinical testing but did not state the results of that testing.  Wysocki states:

> For example, when the ALJ reported the results of the Plaintiff's August 3, 2013 MRI, he failed to mention that the test revealed C2-C3 disc bulge; C5-C6 disc bulge, endplate osteophyte, and facet hypertrophy resulting in central stenosis; C6-C7 disc bulge, endplate osteophyte, and facet hypertrophy resulting in central canal stenosis; and C7-T1 disc bulge.  (R. 15-2, Tr. 27; ECF No. 15-8, Tr. 562-63).  Likewise, when he reported the results of the Plaintiff's January 19, 2015 MRI, he ignored that the report showed T5-T6 disc bulge.  (R. 15-2, Tr. 27; ECF No. 15-12, Tr. 1177).

[ECF No. 20, PageID 1854].  The Court finds no error in the ALJ's omission of the specific test results.  The ALJ's mention of the 2013 and 2015 MRI

11

tests is sufficient, as the ALJ is not required to "address in his written decision every piece of evidence submitted by the party."  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).  The ALJ explicitly stated the overall impressions found from each test, noting that the August 2013 MRI revealed mild cervical spondylosis with spondylotic changes combined with facet/ligamentous hypertrophy that resulted in borderline to mild central canal stenosis, and that the January 2015 MRI showed degenerative disc disease.  [ECF No. 15-2, Tr. 27].

Wysocki then claims that the ALJ ignores other evidence of her impairments that would adversely impact her ability to work.  [ECF No. 20, PageID 1854-55].  However, she does not cite to the record in providing support for this argument.   Thus, the Court deems her argument waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir.1997) (citation and internal quotations omitted).

Wysocki further argues that the ALJ did not assess the impact of her obesity on her RFC, as required by Social Security Ruling 02-01p[3].  That

---

[3] This ruling is available at 2000 WL 628049, at *1 (S.S.A.).

ruling "does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations."  *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006).  Wysocki relies on *Shilo v. Comm'r of Soc. Sec.,* 600 F. App'x 956 (6th Cir. 2015), but unlike here, multiple medical records in *Shilo* "indicat[ed] [the] linakge between these ailments and Shilo's extreme obesity."  *Id.* at 959.  Wysocki does not show that her medical records establish such a linkage and did not even allege disability due to obesity.

Wysocki next claims that the ALJ ignored her diabetes diagnosis, which she argues is significant because it was accompanied by symptoms of pain, chronic fatigue, and difficulty sleeping, and it caused peripheral neuropathy.  [ECF No. 20, PageID 1855-86].  However, the record shows that there are no complications from her diabetes, as recently as 2015.  [ECF No. 15-12, Tr. 1161-65; ECF No. 15-7, Tr. 394; ECF No. 157, Tr. 390; ECF No. 15-15, Tr. 1687-90].  Wysocki cites an October 2014 report from Dr. Browne which states that she was diagnosed with peripheral neuropathy at the pain clinic.  [ECF No. 20, PageID 1855, citing ECF No. 15-7, Tr. 388-90].  But after evaluating Wysocki on a single occasion in July 2014, the pain clinic made no such diagnosis.  [*Id.*, Tr. 425-27].  And despite now claiming that she suffers limiting symptoms as a result of her

13

diabetes, Wysocki testified at the hearing that her diabetes is under control, and requires only a once-a-day insulin injection.  [ECF No. 15-2, Tr. 62-63].  Since Wysocki did not present any evidence that her diabetes "limited [her] in any way or imposed any work-related limitations," any error from the ALJ not addressing her diabetes would be harmless.  *Easterday v. Comm'r of Soc. Sec.*, No. 15-13300, 2016 WL 5422101, at *8 (E.D. Mich. Aug. 19, 2016).

Lastly, Wysocki argues that the ALJ's finding she "requires a handheld assistive device when ambulating on uneven terrain or when performing prolonged ambulation," [ECF No. 15-2, Tr. 26], is at odds with the assessed RFC for light work, citing *Love v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 893, 907 (W.D. Mich. 2009), in support.  In Love, the court found that it was illogical that "Plaintiff can *carry* 20 pounds if he requires a 'hand-held assistive device' to ambulate."  *Id.* (emphasis in original).  But here, Wysocki only needs an assistive device on uneven terrain or for prolonged ambulation, and the VE's testimony took into account her need for an assistive device in assessing the type of work she can perform.  [ECF No. 15-2, Tr. 83-84].   And consistently with the assessed RFC, Wysocki testified that she does not use her walker every day and can ambulate without her walker for short periods.  [ECF No. 15-2, Tr. 50].   Wysocki

14

takes issues with the ALJ rejecting evidence that she needs a walker, but the record she cites indicates that she reported using a walker, not that she needed one. [ECF No. 20, PageID 1858, citing ECF No. 15-7, Tr. 439]. And in fact Rudy Anthony Cueto, M.D., who examined Wysocki at the request of Dr. Browne, recommended that she use a walker *or* cane, to minimize falls. [ECF No. 15-13, Tr. 1210]. Dr. Wood opined that the clinical evidence did not support the need for a walking aid at all. [ECF No. 15-8, Tr. 576].

Wysocki bears the burden on demonstrating that she requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110. She has not met her burden here.

**B.**

Wysocki argues that the ALJ failed to properly evaluate her credibility. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. An ALJ must explain the bases of his credibility determination, and the reviewing court should not be left to speculate as to the grounds for the ALJ's decision. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015).

15

"[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Here, Wysocki argues that the ALJ's reasons for finding her not entirely credible are inconsistent with the record.  It is true that the ALJ misstated some testimony, but his credibility analysis is otherwise supported substantial evidence.

Wysocki argues, and the Commissioner admits, that the ALJ misstated that she testified to being able to walk and stand for 30 minutes, and sit for two hours.  [ECF No. 15-2, Tr. 28].  She testified that she could stand for fifteen minutes and walk for ten without the walker, could walk with the walker for about 20 minutes before needing a break, and could sit for an hour before she must stand up.  [*Id.*, Tr. 61, 64, 66].  Wysocki also claims that the ALJ exaggerated her ability to perform daily activities, noting that she testified to driving, shopping, cleaning and doing laundry slowly, with breaks and with the help of others.  [*Id.*, Tr. 64-65, 68; *see also* ECF No. 15-6, 209-11; ECF No. 15-8, Tr. 566].  But the ALJ's decision was not just based on what Wysocki said that she could do; it was also based upon the ALJ's belief that Wysocki minimized her capabilities.  "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly

16

consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).

In assessing the claimant's credibility, the ALJ is "charged with observing the claimant's demeanor and credibility." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (citation and internal quotation marks omitted). During the hearing here, the ALJ asked Wysocki why she had been lying down on chairs in the waiting room before the hearing, and she replied that she had begun to hurt from sitting. [*Id.*, Tr. 52-53]. Later, the ALJ asked Wysocki why she was shifting around in her seat, and Wysocki responded that it was because of pain in her hip. [*Id.*, Tr. 55]. The ALJ found that these "behaviors were exaggerated."[4] [*Id.*, Tr. 28]. That determination must be given great weight. *Cruse,* 502 F.3d at 542.

The ALJ also cited an inconsistency with respect to Wysocki's testimony that she could lift no more than five pounds, and that if she tried to lift more, "I just lose it. I fall. . . . I can't take the weight." [ECF No. 15-2, Tr. 28, 61]. She later testified that she picked up her walker and threw it in the back of the truck bed when going grocery shopping. [*Id.*, Tr. 67]. She

---

[4] Although the ALJ did not mention it in his decision, he also found it "kind of odd" that Wysocki claimed to sit on the floor to sweep and mop. [ECF No. 15-2, Tr. 76-77].

17

said that she could probably pull her walker out of the trunk of a car.  [*Id.*, Tr. 67-68].  The VE estimated that the walker weighed 18 pounds. [*Id.*, Tr. 74].  Wysocki also testified to traveling to the Upper Peninsula the year prior to the hearing; she and her husband took turns driving.  [*Id.,* Tr. 66-67].  This evidence provides support for the ALJ's determination that Wysocki exaggerated the extent of her limitations.

Another factor cited by the ALJ was the report from Marc Strickler, M.D., who examined Wysocki in March 2015.  [ECF No. 15-2, Tr. 28; citing ECF No. 15-12, Tr. 1171-74].  Under an assessment and plan section referring to fibromyalgia, Dr. Strickler wrote, "[P]sychological factors—pt angry, atypical gait pattern—requests morphine," and then, "I suggested pain psychological counseling—pt walked out of office."  [ECF No. 15-12, Tr. 1174].  Wysocki argues that the ALJ did not recognize that she had tried many other medications and that they did not work.  [ECF No. 20, PageID 1863-64].  But the fact is that Dr. Strickler suggested that Wysocki needed to address her pain with psychological counseling rather than medication, which is support for the ALJ's finding that her medical impairments are not as disabling as she claims.

The ALJ further relied upon Dr. Wood's consultative examination, whose findings "were benign."  [ECF No. 15-2, Tr. 28, referring to 15-8, Tr.

18

570-76].  Wysocki correctly cites Sixth Circuit precedent indicating that fibromyalgia can be a severe impairment even though it cannot be confirmed with objective testing. *Rogers*, 486 F.3d at 243-44.  But Wysocki claims and the ALJ found that she suffers from other impairments in addition to fibromyalgia, including degenerative disc diseases.  [ECF No. 20, PageID 1845-49; ECF No. 15-2, Tr. 24].  Wysocki in fact argues that the ALJ failed to consider objective evidence of her degenerative diseases, [ECF No. 20, PageID 1854], which renders internally inconsistent her argument that the ALJ erred by relying upon the lack of objective evidence arising out of Dr. Wood's examination.  And as a matter of law, when it comes to Wysocki's non-fibromyalgia impairments, there must be "objective medical evidence [that] confirms the severity of the alleged pain arising from the condition" or an "objectively established medical condition [that] is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).  *See also Grider v. Comm'r of Soc. Sec.*, No. 2:10-CV-00083, 2011 WL 1114314, at *8 (S.D. Ohio Mar. 25, 2011) "[T]o the extent Plaintiff's subjective complaints are based on the severe impairment of degenerative disc disease, the ALJ was justified in considering objective testing.").

*Rogers* is distinguishable in another important respect.  In *Rogers*, a treating rheumatologist had opined that the plaintiff needed very sedentary work and could lift no more than five pounds.  *Rogers*, 486 F.3d at 238, 245-46.  In contrast, Wysocki has not offered the opinion of a treating physician indicating that her fibromyalgia either alone or combined with her other severe impairments limits her beyond the assessed RFC.  In the opinion upon which the ALJ relied, Dr. Wood indicated that she had evaluated Wysocki's fibromyalgia and other conditions, and imposed no limitations.  [ECF No. 15-8, Tr. 570-75].  The ALJ did not err in relying upon Dr. Wood's findings in assessing Wysocki's credibility.

The ALJ here explained his credibility determination and his observation of Wysocki's demeanor and credibility are entitled to great deference.  Except for his misstatement regarding Wysocki's testimony, his reasoning was supported by the record.  Under these circumstances, there are no compelling reasons to disturb the ALJ's credibility determination.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 22] be **GRANTED**; that Wysocki's motion [ECF No. 20] be **DENIED**; and the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: June 30, 2017

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 30, 2017.

<u>s/Karri Sandusky for</u>
MARLENA WILLIAMS
Case Manager